UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

| | | |
|---|---|---|
| PETRA RUIZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-98 |
| | ) | |
| v. | ) | Honorable Robert J. Jonker |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3),

seeking review of a final decision of the Commissioner of Social Security denying

plaintiff's claims for disability insurance benefits (DIB) and supplemental security

income (SSI) benefits.  On May 31, 2011, plaintiff filed her DIB application, and on

June 3, 2011, she filed her application for SSI benefits.  (Page ID 124, 214-29).  She

alleged a February 9, 2011, onset of disability.[1]  (Page ID 63, 216).  Her claims were

denied on initial review.  (Page ID 100-17).  On August 15, 2012, she received a hearing

before an administrative law judge (ALJ), at which she was represented by counsel.

(Page ID 60-96).  On September 24, 2012, the ALJ issued her decision finding that

plaintiff was not disabled.  (Op., Page ID 124-31).  On October 25, 2013, the Appeals

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits.  20 C.F.R. § 416.335;  *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also  Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, August 2011 is plaintiff's earliest possible entitlement to SSI benefits.

Council denied review (Page ID 42-44), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds: (1) the ALJ made an erroneous credibility determination, (2) the ALJ erroneously found work at step five of the sequential analysis, and (3) the ALJ failed to properly weigh the medical opinions of record. (Statement of Errors, Plf. Brief at 5-6, Dkt. 13, Page ID 455-56).

Plaintiff's second asserted error has no basis in the record. The ALJ never reached step five in the sequential analysis. At step four, the ALJ found that plaintiff was not disabled because she was capable of performing her past relevant work as a plant worker and an assembler.[2] (Op. at 7, Page ID 130). Accordingly, I need not address this issue.

As for plaintiff's third asserted error, there is no developed argument in plaintiff's brief or reply brief regarding that issue. Issues raised in a perfunctory manner are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see Moore v. Commissioner*, 573 F. App'x 540, 543 (6th Cir. 2014); *Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied

---

[2]Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act. *See White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").  Accordingly, I will not address this issue.

Plaintiff makes an argument under the "Step 5" heading that the ALJ's factual finding regarding her residual functional capacity (RFC) is not supported by substantial evidence (*see* Plf. Brief at 12-16, Page ID 462-66; Reply Brief at 6-10, Page ID 491-95).  While this is not included in plaintiff's statement of errors, the Court will consider plaintiff's challenge to the ALJ's RFC finding as a second claim of error.

Upon review of the record, and for the reasons stated herein, I recommend that the Commissioner's decision be affirmed.

## <u>Standard of Review</u>

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012);

*Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from February 9, 2011, through the date of the ALJ's decision. (Op. at 3, Page ID 126). Plaintiff had not engaged in substantial gainful activity on or after February 9, 2011. (*Id.*). Plaintiff had the severe impairment of degenerative disc

-4-

disease.  (*Id.*).  Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.  (*Id.* at 4, Page ID 127).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 20 pounds occasionally, 10 pounds frequently; stand or walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; do unlimited pushing and pulling; and occasional balancing, climbing, stooping, kneeling, crouching and crawling.

(Op. at 4-5, Page ID 127-28).  The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible.  (*Id.* at 5-6, Page ID 128-29). The ALJ found that plaintiff was not disabled at step four of the sequential analysis because she was capable of performing her past relevant work as a plant worker and an assembler, as plaintiff performed those jobs and as the jobs are generally performed. (*Id.* at 7-8, Page ID 130-31).

## 1.

Plaintiff argues that the ALJ did not have substantial evidence to support her findings regarding plaintiff's credibility.  (Plf. Brief at 6-12, Page ID 456-62; Reply Brief at 1-6, Page ID 486-91)  It is not sufficient for plaintiff to point to "pieces of evidence" on which the ALJ could have based a finding in her favor.[3]  Her burden on

---

[3]In support of her contention that the ALJ erred in assessing her credibility, plaintiff makes a number of factual assertions not found in the record. (Reply Brief at 5-6, Dkt. 16, Page ID 490-91 (citing R. 23, 49, 207-10 (Page ID 58, 84, 246-49))). None of the records cited by plaintiff relate in any way to her assertions.

appeal is much higher.  She must demonstrate that the ALJ's factual finding is not supported by substantial evidence.  42 U.S.C. § 405(g); *see Peterson v. Commissioner*, 552 F. App'x 533, 540 (6th Cir. 2014).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston*, 245 F.3d at 534.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005) (The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . .").

The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard.  This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012).  "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'").  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see*

-6-

*Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

Plaintiff filed limited medical evidence in support of her claims for DIB and SSI benefits. The ALJ considered all the evidence presented. (Op. at 5-7, Page ID 128-30). The ALJ's summary of plaintiff's testimony and the level of restriction that she claimed was accurate. (Op. at 5, Page ID 128; *see* Page ID 76-88). Plaintiff claimed a February 9, 2011, onset of disability. Medical records show that, on or about February 9, 2011, plaintiff reported that she slipped and fell while getting out of her husband's truck and she landed on her buttocks. (Page ID 315, 342). The ALJ did not take issue with plaintiff's characterization of her slip and fall as a motor vehicle accident. (Op. at 5, Page ID 128; *see* Page ID 63).

A CT scan of plaintiff's cervical and lumbar spine showed no acute abnormality or fracture and only mild degenerative changes. (Page ID 311-12). X-rays of her sacrum and coccyx indicated an oblique linear nondisplaced sacral fracture. (Page ID

313).  The lower lumbar vertebral bodies and intervertebral discs appeared to be within normal limits.  (Page ID 337).  There were no acute abnormalities in plaintiff's thoracic spine, but some mild diffuse spondylosis and probable mild degenerative disc changes at T6-7 were noted.  (Page ID 344).  Dale Rowe, M.D., indicated that the plan was to treat the injury somatically and let it heal.  He indicated that plaintiff should be ready to return to work in about three months.  (Page ID 317).  On April 26, 2011, plaintiff reported to Grant Bowman, M.D., that she continued to experience low back pain.  Dr. Bowman indicated that plaintiff would need to be off work for at least another month, probably longer.  (Page ID 318-19).  Plaintiff's X-rays indicated that her sacral fracture was healing, but a possible disk rupture in her lower lumbar spine was noted.  (Page ID 320-21).

On May 6, 2011, an MRI showed mild facet degenerative changes in plaintiff's lower lumbar spine, most advanced at L4-L5 where there was a "mild central canal narrowing secondary to a small posterior broad-based disc protrusion."  There was no evidence of nerve root impingement.  (Page ID 322-23).  An MRI of plaintiff's sacrum and coccyx indicated that the fracture had healed.  A suspected mild degenerative change along the left sacroiliac joint was noted.  (Page ID 324).  On May 31, 2011, Dr. Rowe indicated that plaintiff was not yet ready to return to work.  He indicated that he would re-evaluate plaintiff in six weeks.  (Page ID 326).

Dr. Rowe attempted to address plaintiff's symptoms with outpatient nerve root injections.  (Page ID 327-32, 366).  On September 28, 2011, Dr. Rowe performed a L4-L5 decompressive laminectomy.  (Page ID 354-61).  He kept plaintiff off work for 3

months to allow her to heal from back surgery.  (Page ID 369).  Plaintiff's treating surgeon did not impose any subsequent restrictions precluding the limited range of light work specified in the ALJ's finding regarding plaintiff's RFC.

Plaintiff also received treatment at Intercare Community Health Network during a portion of the period at issue.  On November 4, 2011, plaintiff sought a "second opinion" from Physician's Assistant Nancy Virgilio regarding the back surgery that Dr. Rowe had performed in September.  (Page ID 389).  On examination, Ms. Virgilio found that plaintiff walked with a normal, but slow gait.  She showed no sensory loss.  She was unable to squat.  Ms. Virgilio gave plaintiff a prescription for Norco.  (Page ID 390-91).  In February 2012, Ms. Virgilio completed a "disability certificate" (Page ID 384) and RFC questionnaire (Page ID 399-402).  Among other things, she offered an opinion that plaintiff was "able to walk a mile."[4]  (Page ID 400). On March 23, 2012, Ms. Virgilio indicated that plaintiff's back problem was stable.  She stated that therapy caused pain and that pain medication provided some relief.  (Page ID 412).

On May 2, 2012, plaintiff advised Dr. Rowe that her right leg numbness and paresthesias had completely resolved.  She stated that she had persistent right posterior lateral hip and back pain.  Plaintiff retained 5/5 muscle strength in her lower extremities.  (Page ID 404).  On May 17, 2012, plaintiff was treated with a right

---

[4]The ALJ noted that Ms. Virgilio "was not an 'acceptable medical source' as defined within the meaning of the Regulations.'" (Op. at 6, Page ID 129).  *See* 20 C.F.R. §§ 404.1513, 416.913.

sacroilliac joint injection.  (Page ID 406).  On June 22, 2012, Joshua Ellwitz, M.D., found that plaintiff had a full range of motion in her lower extremities, her motor strength was 5/5 and she walked with a normal gait.  (Page ID 434-47).  Plaintiff had "no neurological abnormalities" and she "denied any weakness."  (Page ID 439).  On July 2, 2012, the MRI of plaintiff's lumbar spine showed "no acute pathology or stenosis." (Page ID 441).  On July 20, 2012, Dr. Ellwitz noted that the MRI showed "no central stenosis," "no significant forminal stenosis," and "some mild to moderate degenerative changes."  He recommended that plaintiff continue with physical therapy and home exercises, and indicated that anti-inflammatories were probably plaintiff's best option for pain.  (Page ID 433).

Plaintiff complained that back and leg pain prevented her from working.  The ALJ found that plaintiff's complaints regarding the intensity, persistence, limiting effects of her symptoms were not fully credible.  (Op. at 5, Page ID 128).  The objective evidence showed a healed sacral fracture, a history of a L4-5 laminectomy, and mild degenerative changes.  (*Id.* at 6, Page ID 129).  The ALJ noted that plaintiff's most recent medical records indicated that she "was able to walk on her heels, toes, squat, and transition from squat to stand." (*Id.* at 7, Page ID 130).  Plaintiff's straight leg tests were negative and her most recent MRI showed "no central stenosis." (*Id.*). Plaintiff was walking on a daily basis and she could walk up to a mile.  (*Id.*).

It was appropriate for the ALJ to take plaintiff's daily activities into account in making her credibility determination.  *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th

Cir. 1990).   The ALJ found that, while plaintiff's impairments imposed some limitations on the tasks she was capable of performing, they did not prevent her from performing the limited range of light work specified in the factual finding regarding her RFC.  (Op. at 7, Page ID 130).

The ALJ did an adequate job explaining why she found that plaintiff's claims that she suffered more significant limitations were not credible.  *Rogers v. Commissioner*, 486 F.3d at 248.  Moreover, the ALJ's factual finding regarding plaintiff's credibility is supported by substantial evidence.

## 2.

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence.  She argues that the ALJ's findings failed to adequately account for her pain-related functional limitations.   (Plf. Brief at 12-16, Page ID 462-66; Reply Brief at 6-10, Page ID 491-95).  RFC is the most, not the least, a claimant can do despite her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). Plaintiff's argument is merely a repackaging of her challenge to the ALJ's factual finding regarding her credibility.  It is rejected for the reasons indicated in the previous section. The ALJ's finding that plaintiff was capable of performing a limited range of light work (Op. at 4-5, Page ID 127-28) is supported by substantial evidence.

In her initial brief, plaintiff claimed that she suffered from physical impairments that prevented her from performing work at the light exertional level.  She did not claim, or even mention, any functional limitations stemming from a mental

impairment.  (Plf. Brief at 1-18, Dkt. 14, Page ID 451-68).  Defendant's brief likewise did not raise any issue regarding a purported mental impairment.  (Def. Brief 1-15, Page ID 469-83).  The first reference to a mental impairment is found on page ten of plaintiff's eleven-page reply brief, in which the plaintiff complains that the ALJ "failed to include any mental health limitations . . . in the RFC." (Reply Brief at 18, Page ID 495).  Plaintiff failed, however, to identify any mental impairment, much less an impairment that would preclude the performance of her past relevant work.

This issue is waived on multiple levels.  First, it is utterly perfunctory.  It is unsupported by any coherent argument, citations to relevant portions of the record, or legal authority.  *See Moore v. Commissioner*, 573 F. App'x at 543.  Second, the argument is raised for the first time in a reply brief.  It is well established that a reply brief is not the proper place to raise new arguments.  *See e.g., Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).  "A reply brief is the plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief.  A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments."  *Morris v. Commissioner*, No. 1:11-v-154, 2012 WL 4953118, at * 10 n. 8 (W.D. Mich. Oct. 17, 2012).  Third, the argument is disregarded because it appears on page ten of plaintiff's reply brief where the court specified that the reply brief was "not to exceed five pages." (Notice Directing the Filing of Briefs, Dkt. 8, Page ID 443).  It is well within the court's discretion to ignore arguments which are presented in violation of applicable page limitations.  *See, e.g., Callence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x

563, 566 (9th Cir. 2007); *Stanfield v. Dart*, No. 10 C 6569, 2014 WL 996482, at * 8 (N.D. Ill. Mar. 13, 2014).

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   March 27, 2015          /s/  Phillip J. Green_____
                                 United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).